UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL J DELEGANS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:16-CV-00070-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 16 & 22. Mr. Delegans brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits under Title II and his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Mr. Delegans' Motion for Summary Judgment.

# I.    Jurisdiction

Mr. Delegans filed his applications for Disability Insurance Benefits and Supplemental Security Income on February 4, 2009. AR 21, 164-73, 576. His alleged onset date in his applications is January 1, 2009 (AR 21, 164-73); the amended alleged onset date is December 1, 2007 (AR 21, 54, 577, 700). Mr. Delegans' applications were initially denied on April 30, 2009, AR 85-88, and on reconsideration on August 7, 2009, AR 93-104. A hearing with Administrative Law Judge ("ALJ") Stephanie Martz occurred on September 8, 2010. AR 43-79. On October 12, 2010, the ALJ issued a decision finding Mr. Delegans ineligible for disability benefits. AR 18-34. The Appeals Council denied Mr. Delegans' request for review on November 21, 2011, AR 1-4.

After the Appeals Council denied his request for review, Mr. Delegans filed a Complaint in Federal District Court, and the Court affirmed the ALJ decision.[1] Mr. Delegans filed a Notice of Appeal, and on July 10, 2014, the Ninth Circuit issued a memorandum decision remanding the claims for a new hearing. AR 800-11. The Ninth Circuit determined that the ALJ's decision failed to provide clear and convincing reasons to discredit Mr. Delegans regarding only his mental limitations, and failed to provide specific and legitimate reasons to discredit the

---

[1] The district court decision is missing from the record. *See* AR 643.

contradicted opinions of Drs. Halley, Kenderdine, and Widlan only regarding Mr. Delegans' mental limitations. *Id.*

While the appeal of the first ALJ decision was pending, Mr. Delegans filed a subsequent application for Disability Insurance Benefits on August 10, 2011 (AR 1161-67, 576), and a subsequent application for Supplemental Security Income on June 10, 2011 (AR 1155-60, 576). On May 21, 2013, ALJ Virginia M. Robinson issued a decision finding Mr. Delegans ineligible for disability benefits. AR 776-94. On February 10, 2015, the Appeals Council determined that the prior ALJ mistakenly found that the October 2010 decision was administratively final. AR 821-24. The Appeals Council found "good cause" to reopen the subsequent applications, vacated the May 21, 2013 ALJ decision, and consolidated the 2009 and 2011 claims. *Id.*

A new hearing with ALJ Marie Palachuk occurred on October 21, 2015. AR 695-747. On November 20, 2015, the ALJ issued a decision finding Mr. Delegans ineligible for disability benefits. AR 573-96. Because the Appeals Council did not assume jurisdiction, the decision of the ALJ became final, *see* 20 C.F.R. § 404.984(d), and Mr. Delegans filed his current Complaint in District Court on March 22, 2016 (ECF No. 5), pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) &

416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Mr. Delegans was 35 years old at the amended alleged date of onset. AR 21, 164, 167, 595. He has at least a high school education. AR 33, 595. Mr. Delegans is able to communicate in English. AR 33, 595. Mr. Delegans previously worked as a household appliance installer, auto parts deliverer, and automobile wrecker. AR 32, 196, 595. Mr. Delegans has a history of cannabis abuse. AR 579.

## V.    The ALJ's Findings

The ALJ determined that Mr. Delegans was not under a disability within the meaning of the Act from the amended alleged onset date of December 1, 2007, through the date of the ALJ's decision. AR 577, 596.

**At step one**, the ALJ found that Mr. Delegans had not engaged in substantial gainful activity since December 1, 2007 (citing 20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.). AR 579.

**At step two**, the ALJ found Mr. Delegans had the following severe impairments: ulcerative colitis, disorder of parathyroid gland, pancreatitis with pseudo cyst, affective disorder, personality disorder, pain disorder due to general medical condition, anxiety disorder, and cannabis abuse (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 579.

At **step three**, the ALJ found that Mr. Delegans did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 582.

**At step four**, the ALJ found Mr. Delegans had the residual functional capacity to perform light work with these limitations: (1) he can perform postural activities frequently except he should never climb ladders, or ropes, or scaffolds; (2) he can frequently handle and finger bilaterally; (3) he should avoid concentrated exposure to extreme temperatures, vibrations, and hazards; (4) he needs ready access to a bathroom, yet even with these unscheduled breaks, he would not be off task over 10 percent of the day; (5) he is able to understand, remember, and carry out simple routine tasks in a predictable routine environment with minimal changes in routine; (6) he is able to perform work requiring minimal and simple judgment and decision making; and (7) he can have only brief and minimal interactions with the public. AR 583.

The ALJ determined that Mr. Delegans is unable to perform any past relevant work. AR 595.

**At step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that he can perform. AR 595.

## VI. Issues for Review

Mr. Delegans argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly assessing Mr. Delegans' subjective complaint testimony credibility; (2) improperly evaluating the lay witness evidence; (3); improperly considering and weighing the medical opinion evidence; and (4) improperly assessing Mr. Delegans' residual functional capacity, and failing to identify jobs, available in significant numbers, that Mr. Delegans could perform despite his functional limitations.

## VII. Discussion

### A. The ALJ Properly Discounted Mr. Delegans' Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Delegans alleges; however, the ALJ determined that Mr. Delegans' statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 584. The ALJ provided multiple reasons for discrediting Mr. Delegans' subjective complaint testimony. AR 584-88.

First, the record supports the ALJ's determination that Mr. Delegans' ulcerative colitis and abdominal pain is not as limiting as he claims. Mr. Delegans alleges abdominal problems, monthly ulcerative colitis flare-ups, and he reports that he would use the bathroom 12 times per day. AR 331, 584, 618-19, 661, 670-71, 725. However, the ALJ provides a detailed analysis of the record which is

replete with inconsistent statements, inconsistency with the medical evidence, and improvement with treatment. AR 585-86.

In October 2008, Mr. Delegans was encouraged to participate in a biological therapy study to treat his ulcerative colitis but did not follow through with the referral. AR 585. In 2009, Mr. Delegans was evaluated for a Centocor ulcerative colitis study but was turned away because objective imaging showed his "mild" colitis was "not severe enough." AR 374, 489, 585. Mr. Delegans, in November 2009, reported one to two bowel movements per day without issue, and denied abdominal discomfort. AR 481.

Throughout 2010, Mr. Delegans reported he was doing quite well and denied any ulcerative colitis flares, he had at most two to three bowel movements per day without issues, he stated he was quite happy with his lack of ulcerative colitis symptoms, objective imaging showed no signs of active ulcerative colitis, and it was noted that his ulcerative colitis was in remission with medications. AR 471, 477, 585, 1996.

Mr. Delegans received treatment for pancreatitis in October 2010, which was resolved by December 2010, and his abdominal examination follow up in March 2011 was normal. AR 586, 1996, 2471. The ALJ noted that Mr. Delegans had abdominal pain due to acute pancreatitis in December 2012, which was shown to have improved in follow up exams, and the ALJ accounted for the pancreatitis in

limiting Mr. Delegans residual functional capacity. AR 586, 1447, 2971, 3404, 3407.

The ALJ noted Mr. Delegans' ulcerative colitis flared up in 2011, but the ALJ also noted Mr. Delegans consistently reported two to five bowel movements per day and his flare ups improved with medication. AR 585, 2443, 2608, 3025. Furthermore, testing and imaging in 2011 and 2012, continued to show no signs of colon inflammation and only a mild disease process. AR 585, 2682, 2717, 2498, 2504, 2994. Mr. Delegans denied having any bowel movement problems in October 2012. AR 585. Additionally, in December 2013, Mr. Delegans reported that his abdominal pain started only one year ago, which the ALJ noted is very inconsistent with the alleged onset date in 2007. AR 586, 1863.

Mr. Delegans contends that the ALJ erred in determining that his complaints of ulcerative colitis are not as debilitating as alleged; however, he provides no medical evidence in the record to the contrary. The ALJ detailed inconsistent statements, inconsistency with the medical evidence, and improvement with treatment, all of which are supported by substantial evidence of record and are clear and convincing reasons to discredit a claimants credibility. *Smolen*, 80 F.3d at 1284.

Second, the ALJ noted that Mr. Delegans' alleged problems with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, and his

pain disorder is completely debilitating are unsupported and inconsistent with the objective medical evidence. AR 209, 584-85. The ALJ provided a detailed summary of the medical evidence describing largely normal gait and station, good upper and lower extremity strength, lack of pain or muscle tenderness, normal strength and range of motion, and no difficulty in moving. AR 585-86. The medical evidence is inconsistent with Mr. Delegans' claims of complete disability due to physical pain, and Mr. Delegans does not contend that the ALJ erred in this determination. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Additionally, the ALJ accommodated Mr. Delegans by limiting him to light work with additional restrictions. AR 586.

Third, the ALJ discredited Mr. Delegans' subjective complaint testimony because his mental health limitations are not as debilitating as he alleges. AR 287. Notably, the Ninth Circuit remanded the decision of the initial ALJ in part because the ALJ erred in discrediting Mr. Delegans' testimony only regarding his mental limitations. AR 805. However, Mr. Delegans does not now challenge this reason provided the by the ALJ for discounting his subjective complaints. Furthermore, the ALJ provides multiple citations to the record detailing Mr. Delegans' generally improved, stable, controlled, and positive mental health examinations. AR 433,

508, 857, 1403. Additionally, Mr. Delegans' treating provider noted on numerous occasions that he was doing well, his depression improved with medication, and he reported most days he is in a "good mood." AR 360, 368, 373, 379, 539, 587. Importantly, Mr. Delegans has discontinued all of his mental health medications. AR 587. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Mr. Delegans further stated that he is "doing reasonably well" even without medications. AR 587, 1385. The medical evidence and Mr. Delegans' own statements support the ALJ's unchallenged determination that Mr. Delegans' mental health symptoms are not as limiting as alleged.

Fourth, the ALJ discredited Mr. Delegans' credibility due to his inconsistent statements regarding his social functioning. AR 587-588. Mr. Delegans does not challenge this reason provided the by the ALJ for discounting his subjective complaints. Mr. Delegans has reported that he has problems being around others and that he does not have energy to talk to friends and family on the phone. AR 587. However, Mr. Delegans also stated he has no significant difficulty getting along with others, his relationships with his coworkers and supervisors has been

positive, he was getting out more and visiting with friends and family, he goes and shoots pool with friends occasionally, he watches wrestling with friends, and he walks with a friend for exercise. AR 431, 506, 521, 539, 587, 2558. While Mr. Delegans' statements have been inconsistent, the ALJ did account for difficulty being around others in the residual functional capacity. AR 588.

Fifth, the ALJ briefly states that Mr. Delegans' continued drug use clouds the severity of his symptoms. AR 588. However, the record does not contain evidence that Mr. Delegans' use of marijuana or street drugs has significantly impacted his mental health symptoms. Because the ALJ provided multiple valid reasons for discrediting Mr. Delegans' subjective complaint testimony, and this error does not negate the validity of the ALJ's ultimate credibility conclusion, this error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2009). The ALJ also properly noted other inconsistent statements regarding Mr. Delegans' drug use and criminal history, which Mr. Delegans does not challenge. AR 588, 240-41, 281, 2030, 2430, 2557, 2558.

Sixth, the ALJ stated that Mr. Delegans' activities did not support his allegations of total disability. AR 588. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the

claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ correctly noted that Mr. Delegans' allegations of disabling problems with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, and getting along with others, and allegations of disabling abdominal pain and his reported need to use the bathroom 12 times per day are inconsistent with his daily activities. AR 209, 331, 584, 661, 725. In particular, the ALJ noted that Mr. Delegans is able to travel out of state (AR 588, 2395); travel throughout the state of Washington (AR 588, 1412, 2015, 2978); engage in daily activities, such as exercising, playing guitar, using hand tools, playing pool, and babysitting (AR 588, 448, 521, 539, 549, 2428, 2540, 2558); socialize with friends and family (AR 588, 506, 1412, 2558); and handle all of his personal needs such as personal care and grooming, cooking, chores, shopping, scheduling and attending doctor's or other appointments, and budgeting and taking care of financial needs (AR 588, 448, 2015, 2430, 2558). Mr. Delegans reported that he does not socialize more because his friends live in Seattle, not because of his problems. AR 588, 659. These activities are inconsistent with Mr. Delegans' allegations of total disability.

The Court does not find the ALJ erred when assessing Mr. Delegans' credibility because Mr. Delegans' allegations of complete disability are

inconsistent with the record and medical evidence, and Mr. Delegans' activities

reflect a level of functioning that is inconsistent with his claims of total disability.

## B. The ALJ Properly Evaluated the Lay Witness Testimony.

The opinion testimony of Mr. Delegans' girlfriend, Carrie Tucker, falls

under the category of "other sources." "Other sources" for opinions include nurse

practitioners, physicians' assistants, therapists, teachers, social workers, spouses,

and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is

required to "consider observations by non-medical sources as to how an

impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226,

1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or

disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100

F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to

"other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th

Cir.1993).

At the second hearing, Ms. Tucker testified that Mr. Delegans was in and out

of the bathroom twenty times per day on and average day, for a total of six hours,

and forty times on a bad day. AR 673-74. She also testified that Mr. Delegans does

not socialize much, as he becomes uncomfortable with many people in the room,

his mood fluctuates, and he has a bad memory. AR 677. Mr. Delegans does not

dispute the ALJ's finding that Ms. Tucker's testimony is comparable to his

subjective complaints, but states that the ALJ erred in assessing his credibility, thus Ms. Tucker's observations should be credited as true. The ALJ stated that the statements made by Ms. Tucker support that Mr. Delegans has some limitations, but the statements generally reflect the same allegations made by Mr. Delegans, which the ALJ properly determined were not entirely credible. AR 594; *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding the ALJ's rejection of a lay witness for the same reasons the ALJ rejected the claimant's credibility); *see also Molina*, 674 F.3d at 1117.

The ALJ properly provided germane reasons for not fully crediting Ms. Tucker's testimony. The ALJ properly assessed Mr. Delegans' testimony and credibility, and as the information provided by Ms. Tucker is cumulative to that provided by Mr. Delegans, the ALJ's well-reasoned explanations for rejecting Mr. Delegans' testimony properly apply equally well to the ALJ's weighing of Ms. Tucker's testimony.

**C. The ALJ Properly Weighed the Medical Opinion Evidence.**

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Shawn Kenderdine, Ph.D.

Dr. Kenderdine completed two evaluations of Mr. Delegans for the Washington State Department of Social and Health Services ("DSHS"), one in October 2008, and a second in November 2009, and provided an opinion regarding

1    Mr. Delegans' limitations. AR 428, 448, 593. In October 2008, Dr. Kenderdine

2    opined that Mr. Delegans was severely limited in his ability to respond

3    appropriately to and tolerate the pressures and expectations of a normal work

4    setting, and in November 2009, Dr. Kenderdine again noted severe limitations in

5    Mr. Delegans' ability to respond to the pressures of a normal work setting. AR

6    428, 448. Dr. Kenderdine's opinion is contradicted by multiple doctors in the

7    record, state agency consultants, and Dr. McKnight who examined the entire

8    record and testified at the third hearing.

9        The ALJ discounted Dr. Kenderdine's opinion for multiple reasons. *See* AR

10   593. Mr. Delegans briefly takes issue with one of the reasons provided by the ALJ

11   that Dr. Kenderdine's opinion appears to be based exclusively on Mr. Delegans'

12   self-reported symptoms. An ALJ may discount a treating provider's opinion if it is

13   based largely on the claimant's self-reports and not on clinical evidence, and the

14   ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

15   Cir. 2014). Indeed, Dr. Kenderdine's treatment records of Mr. Delegans are almost

16   entirely based on Mr. Delegans' subjective complaints and reports, and check box

17   forms. AR 426-39, 444-50.

18       Additionally, the opinion of Dr. McKnight who testified at the hearing is

19   supported by the record and contradicts the opinion of Dr. Kenderdine, and

20   constitutes substantial evidence for discrediting Dr. Kenderdine's opinion.

*Tonapetyan*, 242 F.3d at 1149; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Kenderdine was also unaware of Mr. Delegans' continued drug use and stated that Mr. Delegans was not using drugs, which is inconsistent with the record, and continued drug use can affect mental functioning. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). Dr. Kenderdine checked the box stating that Mr. Delegans was not receiving any mental health treatment, which later reports demonstrate significantly improved his conditions. AR 360, 368, 373, 379, 448, 539, 587.

Furthermore, Dr. Kenderdine's objective notes are inconsistent with his opinion and largely detail that Mr. Delegans is far better than the severe limitations assessed. Specifically, Dr. Kenderdine indicated that he did not observe symptoms that formed the basis for his opinion, he did not observe Mr. Delegans' anxiety, depression, or physical illness. AR 446, 593. Dr. Kenderdine noted that he did observe that Mr. Delegans was fully oriented and cooperative with good eye contact, his thought processes were intact with no evidence of psychosis, and his content was appropriate. AR 450. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. The ALJ

also notes that the DSHS check box forms used by Dr. Kenderdine use different

rules and regulations to establish disability than those used by the Social Security

Agency. Check-box form statements may be given less weight when they are

conclusory in nature and lack substantive medical findings to support them or they

are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d

995, 1014 (9th Cir. 2014).

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). In discounting Dr. Kenderdine's reports, the ALJ supported the

determination with specific and legitimate reasons supported by substantial

evidence in the record. Thus, the Court finds the ALJ did not err in her

consideration of Dr. Kenderdine's opinion.

### c. Dr. Carolyn Halley, M.D.

Dr. Halley completed two physical evaluation forms regarding Mr. Delegans for DSHS, one in September 2009, and a second in May 2010, and provided an opinion regarding Mr. Delegans' limitations. AR 440-43, 451-54, 591. Dr. Halley opined that Mr. Delegans could perform sedentary work. AR 442. Dr. Halley's opinion is contradicted by multiple doctors in the record, including Dr. Leung (AR 468-72), Dr. Turner (AR 871-73), and Dr. St. Louis (AR 893-95).

The ALJ assigned Dr. Halley's opinion little weight. AR 591. The ALJ noted that Dr. Halley's opinion regarding Mr. Delegans' physical limitations is inconsistent with the record. *Id.* In May 2010, Dr. Halley states that Mr. Delegans' ulcerative colitis has never been in remission (AR 452); however, contemporaneous medical records state that Mr. Delegans' ulcerative colitis has significantly improved with medication and is in remission (AR 471-73, 477-78, 481). Dr. Halley states that Mr. Delegans is limited to sedentary work; however, this is contradicted by medical evidence in the record, as well as Mr. Delegans' activities of daily living. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. Furthermore, the ALJ correctly noted that Dr. Halley's opinion regarding Mr.

Delegans' physical limitations appears to be based primarily on Mr. Delegans' self-reports, which the ALJ appropriately found not credible. An ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

In August 2010, Dr. Halley wrote a letter and completed a questionnaire regarding Mr. Delegans' mental health status. AR 561-67. Dr. Halley opined that Mr. Delegans would have difficulty with change in work routines, accepting criticism from supervisors, getting along with peers and performing teamwork under the stresses of a work routine, setting goals, and making work-related decisions. AR 561. Dr. Halley's opinion is contradicted by multiple doctors in the record, state agency consultants, and Dr. McKnight who examined the entire record and testified at the third hearing.

The ALJ did not completely discount this opinion but assigned little weight to Dr. Halley's opinion regarding Mr. Delegans' mental health limitations. AR 591-92. The ALJ discounted Dr. Halley's opinion because it is inconsistent with the record. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at, 602-603. For example, during an October 2009 mental health evaluation, Mr. Delegans stated that he had positive relationships with coworkers and supervisors and he was able to work. AR 431,

1   444. Additionally, Mr. Delegans has mostly normal mental exam findings, and Dr.

2   Burdge observed no mental health symptoms. AR 360, 368, 379, 433, 450, 498,

3   507, 592, 1392, 1403-04, 2018-19, 2559-60. Dr. Halley also documented

4   improvement. AR 368, 372, 378, 379, 539, 587. A discrepancy between a doctor's

5   recorded observations and opinions is a clear and convincing reason for not relying

6   on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

7       Dr. Halley premised her opinion in part on a diagnosis of bipolar disorder,

8   but did not support this diagnosis with any requisite findings. AR 561, 592. The

9   ALJ noted there is nothing in the record to establish this diagnosis. AR 592. The

10  ALJ's determination is further supported by Dr. McKnight who testified there are

11  not such findings in the record. AR 708. The opinion of Dr. McKnight, a mental

12  health specialist, who reviewed the entire record and testified at the hearing, is

13  supported by the record and contradicts the opinion of Dr. Halley, and constitutes

14  substantial evidence for discrediting Dr. Halley's opinion. *Tonapetyan*, 242 F.3d at

15  1149; *Andrews*, 53 F.3d at 1041; *Molina*, 674 F.3d at 1112 (the opinion of a

16  specialist in the relevant field is entitled to greater weight); *See also Holohan v.*

17  *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more

18  weight to ... the opinions of specialists concerning matters relating to their

19  specialty over that of nonspecialists."); *Smolen,* 80 F.3d at 1285 (holding that the

20

ALJ should have given greater weight to a physician with the expertise that was most relevant to the patient's allegedly disabling condition).

The ALJ also correctly found that Dr. Halley's opinion regarding Mr. Delegans' mental limitations appears to be based primarily on Mr. Delegans' self-reports, which the ALJ appropriately found not credible. As noted above, an ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Halley's reports, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Halley's opinion.

### d.  Dr. David Widlan, Ph.D.

Dr. Widlan completed a psychological evaluation of Mr. Delegans for DSHS in May 2010, and provided an opinion regarding Mr. Delegans' limitations. AR 455-61. Dr. Widlan opined that Mr. Delegans was markedly impaired in his ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for his own personal hygiene and appearance, and maintain appropriate behavior in a work setting. AR 459-60. Dr. Widlan also noted that Mr. Delegans was not receiving any treatment, but his symptoms appeared treatable. AR 460. Dr. Widlan's opinion is also contradicted by multiple doctors in the record, state agency consultants, and Dr. McKnight who examined the entire record and testified at the third hearing.

The ALJ did not completely discount Dr. Widlan's opinion but agreed that Mr. Delegans' symptoms appeared treatable and assigned the remainder of the opinion little weight. AR 593. Mr. Delegans does not actually present any argument as to how the ALJ erred in assigning little weight to the opinion of Dr. Widlan; rather, he simply concludes that the reasons provided by the ALJ are not legitimate and appear to indicate the ALJ is biased against the DSHS evaluations. Mr. Delegans must do more than simply issue spot, he has the burden of showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has left it to the

Court to guess at his specific contentions and the evidence that causes him concern. It is not this Court's job to identify the specific evidence that causes Mr. Delegans concern much less explain how it undermines the ALJ's rationale. *United States v. Renzi*, 651 F.3d 1012, 1030 (9th Cir. 2011); *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003).

Nevertheless, the ALJ provided multiple legitimate reasons for assigning little weight to the opinion of Dr. Widlan. As noted above, Dr. Widlan indicated that Mr. Delegans' symptoms appeared treatable if he did receive mental health treatment, which is consistent with other medical evidence in the record that Mr. Delegans has improved with treatment. AR 360, 368, 373, 379, 460, 448, 539, 587, 593. Dr. Widlan was also unaware of Mr. Delegans' continued drug use and stated that Mr. Delegans was not using drugs, which is inconsistent with the record and continued drug use can affect mental functioning. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). The ALJ also discounted the opinion because it consists of a check box form based almost entirely on Mr. Delegans' subjective complaints, which the ALJ found not credible. AR 593. Check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson*, 359 F.3d at

1195; *Garrison*, 759 F.3d at 1014. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. An ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

Furthermore, Dr. Widlan's notes are inconsistent with his opinion and inconsistent with the record and Mr. Delegans' actual abilities. Dr. Widlan opines that Mr. Delegans' has marked impairments with his ability to care for himself, including personal hygiene and appearance. AR 459. Dr. Widlan then states on the next page that Mr. Delegans is actually able to keep up with his daily hygiene. AR 460. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The record also demonstrates that Mr. Delegans' is able to travel out of state (AR 588, 2395); travel throughout the state of Washington (AR 588, 1412, 2015, 2978); engage in daily activities, such as exercising, playing guitar, using hand tools, playing pool, and babysitting (AR 588, 448, 521, 539, 549, 2428, 2540, 2558); socialize with friends and family (AR 588, 506, 1412, 2558); and handle all of his personal needs such as personal care and grooming, cooking, chores, shopping, scheduling and attending doctor's or other appointments, and budgeting and taking care of financial needs (AR 588, 448, 2015, 2430, 2558). An ALJ may

reject a doctor's opinion when it is inconsistent with other evidence in the record.
*See Morgan*, 169 F.3d at 602-603. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In assigning little weight to Dr. Widlan's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Widlan's opinion.

### e. Dr. Kevin Leung, M.D.

Dr. Leung completed a questionnaire in August 2010, regarding Mr. Delegans' limitations. AR 568-72. Dr. Leung opined that Mr. Delegans was capable of low stress work. AR 570. He further opined that Mr. Delegans could sit for about four hours in an eight hour workday and stand/walk for about four hours in an eight hour workday, that Mr. Delegans would need to take unscheduled

restroom breaks every hour, and would miss two or three days of work per month. AR 571-72. Dr. Leung's opinion is contradicted by multiple other doctor opinions in the record, including Dr. Thompson (AR 300), Dr. Turner (AR 871-73), and Dr. St. Louis (AR 893-95). Dr. Leung's opinion is also contradicted by his own contemporaneous medical reports. AR 471-91.

The ALJ assigned great weight to the portion of Dr. Leung's opinion stating that Mr. Delegans is capable of performing low stress work, as this is consistent with the record as a whole, and this limitation was accounted for in the residual functional capacity. AR 590-91. Mr. Delegans does not challenge this finding. The ALJ assigned no weight to the remainder of Dr. Leung's opinion. AR 591. Again Mr. Delegans does not present any argument as to how or why the ALJ erred; rather, he simply concludes without citation that two of the three reasons provided by the ALJ are not legitimate. Again, Mr. Delegans is required to do more, he has the burden of showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has once again left it to the Court to guess at his specific contentions and the evidence that causes him concern. It is not this Court's job to identify the specific evidence that causes Mr. Delegans concern much less explain how it undermines the ALJ's rationale. *Renzi*, 651 F.3d at 1030; *Indep. Towers of Washington*, 350 F.3d at 929–30.

The ALJ did in fact provide multiple legitimate reasons for assigning little weight to a portion of Dr. Leung's opinion. First, the ALJ correctly states that Dr. Leung does not provide any information to support his opinion that Mr. Delegans is limited in his ability to sit, stand, and walk. AR 591. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Second, Dr. Leung's opinion is inconsistent with his own treatment notes which state that Mr. Delegans' ulcerative colitis symptoms improved, is inactive, and in remission. AR 471-73, 477, 478, 481, 591. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. Third, Dr. Leung's opinion is inconsistent with other medical reports in the record and Mr. Delegans' own statements to his providers regarding the frequency of his bowel movements. AR 374, 481, 489, 585, 591, 1996, 2682, 2717, 2498, 2504, 2994. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Leung's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Leung's opinion.

### f. Russell Anderson, LICSW.

The opinion testimony of Mr. Anderson, a licensed social worker, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Mr. Anderson completed a psychological assessment of Mr. Delegans for DSHS in May 2011. AR 2013-17. Mr. Anderson opined that Mr. Delegans is limited by chronic pain associated with medical problems in his ability to stand,

walk, sit, or kneel for any length of time, and that he is unable to perform his usual line of work in heavy labor. AR 2016. The ALJ stated that she agrees that Mr. Delegans is unable to perform his past work, but that no weight is given to Mr. Anderson's opinions regarding Mr. Delegans' physical limitations because these are not within his area of expertise.

Mr. Delegans does not contend that the ALJ erred in rejecting Mr. Anderson's opinions regarding his physical limitations. Rather, Mr. Delegans merely concludes that the ALJ did not state any valid reason for rejecting Mr. Anderson's opinion about his mental functional limitations.

The psychological assessment form completed by Mr. Anderson consists of a series of check boxes, followed by the actual "medical source statement" narrative opinion describing Mr. Delegans' limitations. AR 2013-17. Agency policy directs that it is the narrative portion written by the evaluator that the adjudicators are to use in the assessment of the RFC. Program Operations Manual System (POMS) DI 25020.010(B)(1); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."). The ALJ provided a valid reason for rejecting the narrative portion of Mr. Anderson's assessment, which Mr. Delegans does not contest.

Additionally, if any error occurred, it is harmless, as the three check boxes Mr. Delegans references are cumulative to other opinions which the ALJ has correctly found to be inconsistent with other evidence in the record and were appropriately discredited. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. Additionally, as noted above, check-box form statements may be given less weight as they are conclusory in nature and lack substantive medical findings to support them. *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014. Further, Mr. Anderson's opinion is contradicted by the opinion of Dr. McKnight, who testified at the hearing, and is supported by the record and contradicts the check box form of Mr. Anderson; thus, constitutes substantial evidence for discrediting the check box form. *Tonapetyan*, 242 F.3d at 1149; *Andrews*, 53 F.3d at 1041.

Accordingly, the Court finds the ALJ did not err in her consideration of Mr. Anderson's opinion.

### g. Dr. Mary Pellicer, M.D.

Consultative examiner, Dr. Pellicer, completed a physical evaluation of Mr. Delegans in October 2011. AR 2428-35. Dr. Pellicer opined that Mr. Delegans can stand and walk for four hours in an eight hour workday and sit for six hours with frequent breaks, he can lift 20 pound occasionally, he can bend but not squat, he can manipulate occasionally, and he is limited in a wide variety of settings due to

underlying bipolar disorder. AR 2433. Dr. Pellicer's opinion is contradicted by multiple other doctor opinions in the record, including Dr. Thompson (AR 300), Dr. Turner (AR 871-73), and Dr. St. Louis (AR 893-95). Dr. Pellicer's opinion is also contradicted by her own contemporaneous medical reports. AR 2428-33.

The ALJ assigned little weight to Dr. Pellicer's opinion regarding Mr. Delegans' physical limitations, and no weight to Dr. Pellicer's opinion regarding Mr. Delegans' mental functioning. Dr. Pellicer's opinion regarding mental functioning was not credited because the examination performed was a physical, not psychological, consultative examination. Mr. Delegans does not challenge this determination. Mr. Delegans contends that two of the three reasons the ALJ provided for assigning little weight to Dr. Pellicer's opinion are not legitimate. Again, Mr. Delegans provides a conclusory objection but fails to provide any citation to any treatment notes or other records to undermine the ALJ's decision. Again, Mr. Delegans has failed to meet his burden of showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has once again left it to the Court to guess at his specific contentions and the evidence that causes him concern. It is not this Court's job to identify the specific evidence that causes Mr. Delegans concern much less explain how it undermines the ALJ's rationale. *Renzi*, 651 F.3d at 1030; *Indep. Towers of Washington*, 350 F.3d at 929–30.

The ALJ did provide multiple legitimate reasons for assigning little weight to Dr. Pellicer's opinion. First, the ALJ correctly noted that Dr. Pellicer's opinion of extreme limitations is inconsistent with her own examination findings. AR 589. While Dr. Pellicer opined that Mr. Delegans would be very limited due to physical pain, the majority of the examination findings were normal or close to normal. AR 2428-35. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. Second, Dr. Pellicer's opinion is inconsistent with the record. For example, Dr. Pellicer credited Mr. Delegans' subjective reports of pain while noting "[n]o x-rays available for review" (AR 2429); however, the x-rays in the record were normal (AR 589, 2004-05). An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603. Third, the ALJ assigned the opinion little weight because, while there are a few physical examination notes, the opinion is largely based on Mr. Delegans' self-reports, which the ALJ appropriately found not credible. AR 589, 2428-34. An ALJ may discount an opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Pellicer's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Pellicer's opinion.

### h.  Dr. Aaron Burdge, Ph.D.

Consultative examiner, Dr. Burdge, completed a psychological evaluation of Mr. Delegans in March 2012. AR 1392-1406. Dr. Burdge opined that Mr. Delegans was unlikely to function adequately in a work setting at this time and opined that Mr. Delegans had mild to moderate limitations in multiple areas of cognitive and social functioning. AR 1405-06. Dr. Burdge's opinion is contradicted by multiple doctors in the record, state agency consultants, and Dr. McKnight who examined the entire record and testified at the third hearing. Dr. Burdge's opinion is also contradicted by his own contemporaneous medical reports. AR 1392-1405.

1    The ALJ assigned some weight to the opinion of Dr. Burdge that Mr.

2  Delegans has no more than moderate limitations in cognitive and social

3  functioning, because it is generally consistent with the mental status examination

4  results and Mr. Delegans' daily activities. AR 592. Mr. Delegans does not

5  challenge this determination. The ALJ assigned little weight to Dr. Burdge's

6  opinion that Mr. Delegans would be unlikely to function adequately in a workplace

7  at this time. *Id*. Mr. Delegans concludes, without any argument or citation to

8  anything in the record to support his conclusion, that the ALJ's reasoning for

9  assigning little weight to a portion of the opinion is not supported by substantial

10  evidence and is not legitimate. Mr. Delegans has failed to meet his burden of

11  showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has once

12  again left it to the Court to guess at his specific contentions and the evidence that

13  causes him concern. It is not this Court's job to identify the specific evidence that

14  causes Mr. Delegans concern much less explain how it undermines the ALJ's

15  rationale. *Renzi*, 651 F.3d at 1030; *Indep. Towers of Washington*, 350 F.3d at 929–

16  30.

17    Furthermore, the ALJ did provide a legitimate reason, supported by

18  substantial evidence in the record, to assign little weight to the opinion. The ALJ

19  found Dr. Burdge's opinion to be inconsistent with his contemporary exam

20  findings and notes. AR 592. A discrepancy between a doctor's recorded

observations and opinions is a clear and convincing reason for not relying on the

doctor's opinion. *Bayliss*, 427 F.3d at 1216. "[A]n ALJ need not accept the opinion

of a doctor if that opinion is brief, conclusory, and inadequately supported by

clinical findings." *Id*. Additionally, an ALJ may reject a doctor's opinion when it is

inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603.

Indeed, Dr. Burdge observed no mental health symptoms (AR 1392), and Dr.

Burdge found that Mr. Delegans could maintain his activities of daily living in a

timely manner by himself, Mr. Delegans reported having no significant difficulty

getting along with others, and Dr. Burdge's notes state that Mr. Delegans has no

difficulty attending to his needs (AR 1402). Mr. Delegans' mental status

examination was unremarkable. AR 592, 1392-1406. Dr. McKnight's testimony

further supports the ALJ's determination and similarly found Dr. Burge's opinion

out of step with his findings. AR 710-12.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). In assigning little weight to the opinion of Dr. Burdge, the ALJ

supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Burdge's opinion.

### i. Dr. David Jackson, M.D.

Dr. Jackson completed a functional assessment and a medical source statement of Mr. Delegans, and provided an opinion regarding Mr. Delegans' limitations. AR 2471-72, 2963-66. Dr. Jackson opined that Mr. Delegans could not stand or sit for six hours with standard rest breaks or sit for prolonged periods, he could lift a maximum of ten pounds and could frequently lift two pounds, he needed regular access to a restroom, he would take six to eight restroom breaks for approximately ten minutes each, and he would miss four days of work per month. *Id*. Dr. Jackson stated that the limitations are due to Mr. Delegans' need for frequent trips to the restroom and frequent muscle cramping. AR 2571. Dr. Jackson's opinion is contradicted by multiple other doctor opinions and evidence in the record, including Dr. Thompson (AR 300), Dr. Turner (AR 871-73), Dr. St. Louis (AR 893-95), Dr. Leung (AR 568-72), and Dr. Pellicer (AR 2428-35).

The ALJ did not completely discount the opinion of Dr. Jackson but assigned the opinion little weight. AR 589-90. Mr. Delegans takes issue with this determination by the ALJ, but simply concludes, without any argument or citation to anything in the record to support his conclusion, that the ALJ is incorrect

because Dr. Jackson's opinion is consistent with the objective evidence and is

supported by his findings and longitudinal knowledge of Mr. Delegans'

impairments. Here again, Mr. Delegans has failed to meet his burden of showing

prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has once again

left it to the Court to guess at his specific contentions and the evidence that causes

him concern. It is not this Court's job to identify the specific evidence that causes

Mr. Delegans concern much less explain how it undermines the ALJ's rationale.

*Renzi*, 651 F.3d at 1030; *Indep. Towers of Washington*, 350 F.3d at 929–30.

Dr. Jackson's opinion was assigned little weight for multiple reasons. The

ALJ agreed that Mr. Delegans' ulcerative colitis symptoms did impair his ability to

work and accounted for these limitations in the residual functional capacity, but not

to the extent opined by Dr. Jackson. AR 583, 590. The ALJ noted that Mr.

Delegans' ulcerative colitis is not as disabling as Dr. Jackson opined, and the

opinion is inconsistent with the contemporaneous medical evidence, exams, and

testing. AR 590. For example, Mr. Delegans' ulcerative colitis was deemed "mild"

and "not severe enough" for a biological therapy study (AR 374, 489, 585); the

medical evidence repeatedly notes a much lower frequency of bowel movement of

one to five bowel movements per day, a lack of ulcerative colitis symptoms, and

remission (AR 471, 477, 481, 585, 1996); testing and imaging, including a

colonoscopy one month prior to Dr. Jackson's medical source statement, were mild

or normal (AR 585, 2498, 2504, 2682, 2717, 29940; and Mr. Delegans denied

having bowel movement problems, including in October 2012 (AR 585). An ALJ

may reject a doctor's opinion when it is inconsistent with other evidence in the

record. *See Morgan*, 169 F.3d at 602-603. Additionally, Mr. Delegans' is able to

travel out of state (AR 588, 2395); travel throughout the state of Washington (AR

588, 1412, 2015, 2978); and engage in daily activities, such as exercising, playing

guitar, using hand tools, playing pool, and babysitting (AR 588, 448, 521, 539,

549, 2428, 2540, 2558). An ALJ may properly reject an opinion that provides

restrictions that appear inconsistent with the claimant's level of activity. *Rollins*,

261 F.3d at 856.

The ALJ also discounted Dr. Jackson's opinion because of further

inconsistencies with the objective medical evidence. The record demonstrates

normal objective findings in Mr. Delegans' strength and range of motion in his

extremities, and his cramping is decreased when his calcium is balanced. AR 2428-

35. As stated above, an ALJ may reject a doctor's opinion when it is inconsistent

with other evidence in the record. *See Morgan*, 169 F.3d at 602-603.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 44

1    *Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

2    rational interpretation, one of which supports the ALJ's decision, the conclusion

3    must be upheld"). In discounting Dr. Jackson's opinion, the ALJ supported the

4    determination with specific and legitimate reasons supported by substantial

5    evidence in the record. Thus, the Court finds the ALJ did not err in her

6    consideration of Dr. Jackson's opinion.

7        **j.  Dr. Larry Birger, M.D.**

8        Dr. Birger completed a medical source statement regarding Mr. Delegans,

9    and provided an opinion regarding Mr. Delegans' limitations. AR 1454-57. Dr.

10   Birger opined that Mr. Delegans could stand or walk for less than two hours and sit

11   for less than two hours, he can rarely lift ten pounds and would have postural

12   restrictions, he would take unscheduled bathroom breaks three to nine times per

13   day for 10 to 20 minutes each, he would need to lie down every two hours, he

14   would be off task 25 percent of the time, he was incapable of even low stress work,

15   and he would be absent more than four days per month. *Id*. Dr. Birger's opinion is

16   contradicted by multiple other doctor opinions and evidence in the record,

17   including Dr. Thompson (AR 300), Dr. Turner (AR 871-73), Dr. St. Louis (AR

18   893-95), Dr. Leung (AR 568-72), and Dr. Pellicer (AR 2428-35).

19       The ALJ did not completely discount the opinion of Dr. Birger but assigned

20   the opinion little weight. AR 5-90. Mr. Delegans takes issue with this

determination by the ALJ, but simply concludes, without any argument or citation to anything in the record to support his conclusion, that none of the ALJ's reasons are specific and legitimate. Mr. Delegans again fails to meet his burden of showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. Mr. Delegans has once again left it to the Court to guess at his specific contentions and the evidence that causes him concern. It is not this Court's job to identify the specific evidence that causes Mr. Delegans concern much less explain how it undermines the ALJ's rationale. *Renzi*, 651 F.3d at 1030; *Indep. Towers of Washington*, 350 F.3d at 929–30.

The ALJ provided multiple specific and legitimate reasons, supported by the record, to assign little weight to Dr. Birger's opinion. The ALJ notes that Dr. Birger's opinion is inconsistent with the overall medical evidence. AR 590. As the ALJ correctly states, despite Dr. Birger's very limiting opinion, the objective medical evidence demonstrates that Mr. Delegans' physical examinations have been largely unremarkable, he has a full range of motion in his extremities, his strength and sensation of the extremities are intact, and his gait is normal. AR 585-86, 590, 2428-35. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603.

Additionally, the ALJ again noted that Mr. Delegans' ulcerative colitis is stable and he has reported only having two to three bowel movements per day. AR 471, 477, 481, 585, 590, 1996. Mr. Delegans agrees that his ulcerative colitis is

stable, but states this is not a valid reason to reject Dr. Birger's opinion. However, the fact that Mr. Delegans' ulcerative colitis is stable is a very valid reason for assigning little weight to Dr. Birger's opinion, especially because most the limitations opined by Dr. Birger are directly related to Mr. Delegans' ulcerative colitis. As previously stated, an ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603. The ALJ also assigned the opinion little weight because the opinion relies heavily on Mr. Delegans' subjective complaints that the ALJ properly found not entirely credible. AR 590. An ALJ may discount an opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Birger's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial

evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Birger's opinion.

### k.  Other Physician Opinions.

Mr. Delegans briefly notes that the ALJ assigned "great" or "significant" weight to multiple other doctors in the record including Dr. McKnight, Dr. St. Louis, and Dr. Thompson. Mr. Delegans then concludes that the ALJ erred by failing to acknowledge that the opinions of non-examining physicians are generally entitled to less weight that treating and examining physicians.

However, the ALJ specifically notes that she has considered the opinions in accordance with the requirements of the regulation cited by Mr. Delegans, 20 C.F.R. § 404.1527. The ALJ supported her determinations with valid reasons supported by the record, such as consistency with the longitudinal record and objective findings, supportability, and other factors. *See* 20 C.F.R. § 404.1527(c). Additionally, Dr. McKnight's opinion was properly afforded great weight because of its consistency with the objective evidence and longitudinal record, his expertise and specialty in the field of mental health, and he thoroughly explained his rational. *See* 20 C.F.R. §§ 404.1527(c)(3)-(c)(6), 416.927(c)(3)-(c)(6). Great weight may legitimately be given to the opinion of a non-examining expert who testifies at a hearing, such as Dr. McKnight. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

Moreover, it is the ALJ's duty to explain why "significant probative evidence has been rejected," rather than explain why it was not. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111; *see also Thomas*, 278 F.3d at 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err.

### D. The ALJ properly assessed Mr. Delegans' residual functional capacity and did not err at step five of the sequential evaluation process.

Mr. Delegans argues that his assessed residual functional capacity and the resulting step five finding did not account for all of his limitations. Specifically, Mr. Delegans contends that the assessed residual functional capacity is incomplete because it includes some, but not all, of the limitations suggested by the medical experts and lay witnesses discussed above. However, the Court has already found no error in the ALJ's treatment of the above disputed medical experts and lay witnesses. *See supra* at 17-48. The ALJ's decision is supported by substantial evidence and the ALJ appropriately constructed Mr. Delegans' residual functional capacity.

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work available in significant numbers in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012). If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Mr. Delegans briefly contends that the ALJ failed to identify jobs available in significant numbers that Mr. Delegans could perform despite his functional limitations because not every limitation suggested by the doctors and lay witnesses was included. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The ALJ properly framed the hypothetical question addressed to the vocational expert. Additionally, the vocational expert identified jobs in the national

economy that exist in significant numbers that match the abilities of Mr. Delegans, given his limitations. Thus, the Court finds the ALJ did not err in assessing Mr. Delegans' residual functional capacity and the ALJ properly identified jobs that Mr. Delegans could perform despite his limitations.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 22,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 23rd day of October, 2017.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge